DECISION
{¶ 1} Relator, Eva Mae Clark, widow of claimant/decedent Donald Clark ("claimant"), filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order, *Page 2 
which denied claimant permanent total disability ("PTD") compensation, and ordering the commission to find that claimant was entitled to that compensation.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) No party has objected to the magistrate's findings of fact, and we adopt them as our own. Claimant has, however, filed objections to the magistrate's conclusions of law. In those objections, claimant asserts that the magistrate erred in not concluding that the commission erred in relying on the written report of James T. Lutz, M.D., because: (1) the report contradicted Dr. Lutz's deposition testimony; and (2) Dr. Lutz did not accept the findings of claimant's treating physician. We disagree.
 {¶ 3} First, we agree with the magistrate's conclusion that Dr. Lutz's written report did not contradict his deposition testimony. In his report, Dr. Lutz concluded that claimant was capable of performing sedentary work. In his deposition, Dr. Lutz stated that claimant's allowed conditions could make certain types of sedentary or repetitive work more difficult, but he did not state that such work would be impossible. See Lutz Depo. at 15-16.
 {¶ 4} Second, we agree with the magistrate's conclusion that Dr. Lutz accepted the physical findings of claimant's treating physician, Mark T. Spears, D.C., at least to some extent. In his deposition, Dr. Lutz stated that he "would have been interested in" performing grip strength tests on claimant, but was unable to do so because claimant had died as a result of unrelated causes. (Depo. at 18.) He also stated that, in general, *Page 3 
when conducting a file review, he views a treating physician's findings as "simply a barometer that needs to be tested." (Depo. at 21.) Claimant argues that the commission should have given Dr. Spears' findings, which were based on Dr. Spears' personal examination of claimant, more weight than Dr. Lutz's findings, which were made without the benefit of a personal examination. However, as the magistrate explained, the commission has discretion to determine the weight of the evidence before it. Therefore, we overrule claimant's objections.
 {¶ 5} Having conducted an independent review of the record in this matter, and finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ is denied.
Objections overruled, writ of mandamus denied.
McGRATH, J., concurs.
 BROWN, J., concurs separately. *Page 5 
 APPENDIX A MAGISTRATE'S DECISION
Rendered on September 21, 2007
 IN MANDAMUS {¶ 8} Relator, Eva Mae Clark, widow of claimant/decedent Donald Clark ("claimant"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to *Page 6 
vacate its order which denied claimant permanent total disability ("PTD") compensation and ordering the commission to find that claimant was entitled to that compensation.
Findings of Fact: {¶ 9} 1. Claimant sustained a work-related injury on December 4, 1996, and his claim was ultimately allowed for "sprain of neck; sprain thoracic region; aggravation of pre-existing cervical arthritis C5-6 and C6-7."
 {¶ 10} 2. Claimant treated with Mark T. Spears, D.C., who provided him with ongoing chiropractic care to help alleviate and manage his pain. Claimant did not have any surgery related to the allowed conditions.
 {¶ 11} 3. Prior to his death, claimant filed two motions: a motion to increase his percentage of permanent partial disability ("PPD") on January 23, 2002, and a motion seeking the payment of PTD compensation filed October 15, 2002. Claimant's date of death is November 15, 2002.
 {¶ 12} 4. In support of claimant's above-noted motions, claimant submitted reports from his treating physician, Dr. Spears, both of which indicate that they were based upon an examination of claimant from August 6, 2001. Both reports have four paragraphs and the first three paragraphs, identified as history, complaints and physical examination are identical; however, the final paragraph of each report, identified as opinion, differs. In both reports, Dr. Spears indicated that claimant had constant and episodically severe neck and upper back pain and stiffness with spasms, severe morning stiffness, and radicular pain in the left upper extremity which radiated into the lateral aspect of claimant's hand and which was aggravated by certain activities and position. Claimant reported a constant, unrelenting throb in his central and lower neck *Page 7 
and indicated that, at times, he has difficulty holding his head in the upright position. Dr. Spears noted that claimant could not sit comfortably for prolonged periods, could not reach at chest level or above without pain, has difficulty rising from a seated position, and episodes of weakness in the left upper extremity. Further, Dr. Spears noted that claimant had difficulty turning his neck, episodic dizziness, ringing in his ears, and trouble concentrating. With regard to his physical examination, Dr. Spears noted that claimant's grip strength in his left hand was diminished by over 50 percent, that he has sensory loss along the C5-C6 dermatomal distribution on the left, with diminished two-point discrimination relating to his left hand. Dr. Spears noted palpable spasms and guarding, paraspinal muscle tension central and paraspinal from C3 to T1, pain traveling laterally in a diffuse manner to include the trapezius muscle groups, greater on the left than right. Concerning cervical ranges of motion, Dr. Spears noted flexion of 30 degrees, extension of ten degrees with increasing pain, left lateral flexion of five degrees, right lateral flexion of ten degrees, left rotation of 40 degrees, and right rotation of 50 degrees. Dr. Spears noted consistent crepitation throughout the full arc of motion and increased radicular pain and numbness associated with the end points of most of the above-noted ranges of motion.
 {¶ 13} In the report submitted with claimant's increase of his PPD award, Dr. Spears opined that claimant had a 31 percent impairment of the whole person directly related to the allowed conditions.
 {¶ 14} In the report submitted with claimant's PTD application, Dr. Spears opined:
 * * * His chronic condition, including upper extremity weakness secondary to a condition complicated by degenerative changes also allowed in this claim, makes any type of employment that requires any repetitive use of the upper *Page 8 
extremities, any lifting or reaching above chest level, and any prolonged sitting nearly impossible for him. Any inclusion of twisting, reaching, or lifting is physically beyond his capacities. He cannot tolerate vibration or working in cooler temperatures. These permanent limitations, each taken individually, markedly reduce his employability and ability to compete successfully in the workforce. Based on all these listed factors, and in combination with his age, employment history, practical work experience, educational levels and other background information, I feel that Mr. Donald Clark is permanently and totally disabled, and is therefore unable to sustain any type of renumerative [sic] employment whatsoever. This permanent disability is directly and causally related to the allowed conditions of the above referenced claim, their permanent residuals, and their subsequent and combined complicating factors.
 {¶ 15} 5. Claimant was scheduled for an independent medical examination with James T. Lutz, M.D.; however, before Dr. Lutz had the opportunity to examine him, claimant died of colon cancer. As such, Dr. Lutz's report, dated April 22, 2003, is a file review. At the outset of his report, Dr. Lutz indicated that he reviewed the following materials: "The claim file related to the injury of record, and a statement of facts prepared by the Industrial Commission of Ohio for a scheduled examination on 1/3/03." Thereafter, Dr. Lutz noted that claimant underwent no surgical procedures related to the allowed conditions and that his treatment involved extended chiropractic care. Dr. Lutz opined that claimant's allowed conditions had reached maximum medical improvement and he assessed a five percent whole person impairment. Dr. Lutz also completed a physical strength rating form and indicated that claimant was capable of performing physical work activities at a sedentary level.
 {¶ 16} 6. Relator requested permission to depose Dr. Lutz because Dr. Lutz did not list or refer to any medical records that he reviewed at the time of his evaluation, failed to opine that he accepted the findings and conclusions of the examining *Page 9 
physicians, and sought to explore the disparity between Dr. Lutz's opinion that claimant had a five percent whole person impairment in spite of the fact that claimant had received an award of 20 percent permanent partial impairment.
 {¶ 17} 7. The deposition of Dr. Lutz took place on August 19, 2003. During the deposition, Dr. Lutz was asked to explain what symptoms might be experienced by a person with arthritis at C5-6 and C6-7. Dr. Lutz indicated the most common symptoms would be localized pain in the involved area of the neck which may be severe enough to encroach upon the nerves and cause radicular type symptoms with pain and numbness in the arms. Dr. Lutz was also asked whether or not the symptoms which Dr. Spears indicated claimant experienced were consistent with claimant's allowed conditions. Dr. Lutz responded in the affirmative. Counsel then asked Dr. Lutz whether or not it would be difficult for a person experiencing the symptoms of which claimant complained to perform work-related activities. Dr. Lutz responded that activities over a certain weight would be difficult; however, Dr. Lutz continued to opine that sedentary work would still be possible, at the lower range of lifting, provided that repetitive work was not troublesome. In this regard, Dr. Lutz indicated that only certain types of repetitive work would be difficult, but that desk work with repetitive use of the fingers may not aggravate the condition. Dr. Lutz further indicated that he did accept Dr. Spears' physical findings but that he did not agree with Dr. Spears' ultimate conclusion.
 {¶ 18} 8. An employability assessment was prepared by Robert A. Mosley. Based upon the report and deposition of Dr. Lutz, Mosley opined that claimant could perform the following jobs: "Assembler semi-conductor, Sorter, Ticker taker, Surveillance system monitor." Mosley noted further that claimant's age of 71 was a *Page 10 
negative factor, that his 11th grade education with additional training in gas and diesel engine repair and his ability to read, write and perform basic math were sufficient to meet basic demands of entry-level occupations. Further, Mosley noted that relator's prior work indicated that he would be able to meet the basic demands of entry-level occupations.
 {¶ 19} 9. A vocational file review was prepared by Michael T. Farrell, Ph.D. Based upon his review of the medical reports and claimant's advanced age, residual physical impairment, limited education, and lack of transferable work skills, that claimant would be permanently and totally disabled. {¶ 20} 10. Claimant's motion for PTD compensation was heard before a staff hearing officer ("SHO") on April 5, 2005, and was denied. The SHO relied upon the medical report and deposition of Dr. Lutz as well as the vocational report and addendum of Mosley. With regard to the nonmedical disability factors, the SHO concluded:
 The Staff Hearing Officer finds that the injured worker was 71 years of age at the time the application for Permanent and Total Disability Compensation was filed, had an 11th grade formal education and work experience as industrial cleaner, maintenance mechanic, bottle packing machine cleaner, bottle packer, gas station cashier, installation power unit tender, and diesel mechanic. The Staff Hearing Officer finds that the injured worker's age would have prevented him from participating in formal programs aimed at academic remediation. The Staff Hearing Officer further finds that the injured worker's age was a negative reemployment factor in that it would have made it difficult for him to compete with younger individuals for available positions. However, the Staff Hearing Officer finds that age alone would not preclude the injured worker from performing gainful employment. The Staff Hearing Officer further finds that the injured worker's 11th grade formal education with the reported ability to read, write, and perform basic mathematics was sufficient to enable him to access entry-level unskilled jobs. The Staff Hearing Officer further finds that the injured worker's varied *Page 11 
work history demonstrated his ability to perform work from skilled to unskilled work levels in different work environments. Considering the injured worker's age, education, and work experience in conjunction with his ability to perform sedentary employment, the Staff Hearing Officer finds that the injured worker would have been capable of performing the occupations noted in the vocational report of Mr. Mosley, such as: semi conductor assembler, sorter, ticket taker, and surveillance system monitor.
 {¶ 21} 11. Thereafter, relator herein, claimant's widow, filed the instant mandamus action.
Conclusions of Law: {¶ 22} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 23} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this *Page 12 
determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 24} In this mandamus action, relator contends that the commission abused its discretion by relying upon the report of Dr. Lutz. Relator asserts that Dr. Lutz's deposition testimony contradicted statements which he made in his report. As such, relator contends the report of Dr. Lutz is equivocal and cannot constitute "some evidence" upon which the commission could rely. For the reasons that follow, this magistrate disagrees.
 {¶ 25} It is undisputed that equivocal medical opinions do not constitute evidence upon which the commission can rely. It is further undisputed that, when a doctor repudiates his former opinion, that report likewise does not constitute some evidence upon which the commission can rely. However, the magistrate disagrees with relator's characterization of Dr. Lutz's deposition testimony as repudiating his report.
 {¶ 26} In State ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 649, 657, the Supreme Court of Ohio summarized the distinction between the ambiguous, equivocal and repudiated reports as follows:
 * * * [E]quivocal medical opinions are not evidence. See, also, State ex rel. Woodard v. Frigidaire Div., Gen. Motors Corp. (1985), 18 Ohio St.3d 110 * * * Such opinions are of no probative value. Further, equivocation occurs when a *Page 13 
doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Ambiguous statements, however, are considered equivocal only while they are unclarified. [State ex rel. Paragon v. Indus. Comm. (1983), 5 Ohio St.3d 72.] Thus, once clarified, such statements fall outside the boundaries of [State ex rel. Jennings v. Indus. Comm. (1982), 1 Ohio St.3d 101], and its progeny.
 Moreover, ambiguous statements are inherently different from those that are repudiated, contradictory or uncertain. Repudiated, contradictory or uncertain statements reveal that the doctor is not sure what he means and, therefore, they are inherently unreliable. Such statements relate to the doctor's position on a critical issue. Ambiguous statements, however, merely reveal that the doctor did not effectively convey what he meant and, therefore, they are not inherently unreliable. Such statements do not relate to the doctor's position, but to his communication skills. If we were to hold that clarified statements, because previously ambiguous, are subject to Jennings or to commission rejection, we would effectively allow the commission to put words into a doctor's mouth or, worse, discount a truly probative opinion. Under such a view, any doctor's opinion could be disregarded merely because he failed on a single occasion to employ precise terminology. In a word, once an ambiguity, always an ambiguity. This court cannot countenance such an exclusion of probative evidence.
 {¶ 27} Contrary to relator's assertions, the magistrate finds that the report of Dr. Lutz and his deposition testimony are not inconsistent or equivocal. Although when asked, Dr. Lutz did admit that the symptoms allegedly experienced by claimant could make certain sedentary employment more difficult, nowhere in his deposition testimony did he indicate that he had changed his opinion as to whether or not claimant was capable of performing some sustained remunerative employment at a sedentary level. Further, Dr. Lutz indicated that he did accept the findings of Dr. Spears. As such, the magistrate finds that relator has not demonstrated that Dr. Lutz's deposition testimony contradicted or otherwise rendered equivocal or ambiguous his earlier report. *Page 14 
Furthermore, to the extent that relator also argues that the vocational report of Mosley did not constitute some evidence upon which the commission could rely, this argument is based upon relator's contention that Dr. Lutz's opinion was contradicted. As such, the magistrate finds that the vocational report of Mosley did constitute some evidence upon which the commission could rely.
 {¶ 28} Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.Teece. It is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's. State ex rel. Pass v. C.S.T. Extraction Co. (1996),74 Ohio St.3d 373. So long as the commission's decision is supported by some evidence, mandamus relief is not appropriate.
 {¶ 29} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying claimant's application for PTD compensation and this court should deny relator's request for a writ of mandamus.